UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PETER McCLUSKEY,

                Plaintiff,

                                                                                **MEMORANDUM AND ORDER**

        - against -                                                    17-CV-5873 (RRM) (ARL)

JOHN IMHOF, *et al.*,

                Defendants.
------------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      *Pro se* plaintiff Peter McCluskey, an individual who receives Supplemental Nutrition Assistance Program ("SNAP") benefits, brings this civil rights action against John Imhof, the Commissioner of Nassau County Department of Social Services ("DSS"); Jeanne Ryan, the SNAP Director at DSS; Samuel Roberts, the Commissioner of the New York State Office of Temporary and Disability Assistance ("OTDA"); and Darla P. Oto, the Principal Hearing Officer at OTDA, alleging, among other things, that "policies and practices" employed by DSS in determining the medical income deduction for purposes of calculating SNAP benefits violate federal law.[1] All four defendants previously moved to dismiss McCluskey's amended complaint and, in a Report and Recommendation dated August 27, 2018 (the "R&R"), Magistrate Judge Lindsay recommended granting the motions and dismissing this action. (*McCluskey v. Imhof*, No. 17-CV-5873 (JFB) (ARL), 2018 WL 5077169, at *1 (E.D.N.Y. Aug. 27, 2018).) McCluskey timely objected to the R&R, and upon review of those objections, Judge Joseph F.

---

[1] The Supplemental Nutrition Assistance Program ("SNAP") provides needs-based nutritional benefits to supplement the food budgets of low-income individuals and families. *See* https://www.fns.usda.gov/snap/supplemental-nutrition-assistance-program. Although SNAP was created by federal statute, state and local agencies are responsible for determining who is eligible for benefits and how much they will receive. *See* https://www.fns.usda.gov/snap/state. DSS is the agency responsible for determining SNAP benefit eligibility in Nassau County, where McCluskey resides, and OTDA is a state agency charged with overseeing the administration of SNAP benefits in New York State.

Bianco adopted the R&R in its entirety and entered judgment in favor of defendants.[2] (*McCluskey v. Imhof*, No. 17-CV-5873 (JFB) (ARL), 2018 WL 4521207 (E.D.N.Y. Sept. 21, 2018).) McCluskey now moves 1) to alter or amend that judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, (Doc. No. 59), and 2) to file a supplemental pleading pursuant Rule 15(d), (Doc. No. 62). For the reasons set forth below, both motions are denied.

## BACKGROUND

Although familiarity with the R&R and Judge Bianco's order adopting that R&R is presumed, the Court will nonetheless recap those facts necessary to provide context for this Memorandum and Order. Eligibility for SNAP benefits is determined based on gross income, minus certain exclusions and deductions. *See* 7 U.S.C. § 2014(c). One of those deductions – the excess medical expense deduction set forth in 7 U.S.C. § 2014(e)(5) – is at issue in this case. Subsection A of that provision states:

> A household containing an elderly or disabled member shall be entitled, with respect to expenses other than expenses paid on behalf of the household by a third party, to an excess medical expense deduction for the portion of the actual costs of allowable medical expenses, incurred by the elderly or disabled member, exclusive of special diets, that exceeds $35 per month.

Subsection B(i) requires state agencies to "offer an eligible household under subparagraph (A) a method of claiming a deduction for recurring medical expenses that are initially verified under the excess medical expense deduction in lieu of submitting information on, or verification of, actual expenses on a monthly basis." While this method is not prescribed by the statute, subsection B(ii) dictates, among other things, that the method "shall … (II) rely on reasonable estimates of the expected medical expenses of the [eligible elderly or disabled household]

---

[2] This action was re-assigned to the undersigned on September 10, 2019 following Judge Bianco's elevation to the Second Circuit Court of Appeals.

member for the certification period (including changes that can be reasonably anticipated based on available information about the medical condition of the member, public or private medical insurance coverage, and the current verified medical expenses incurred by the member) ...."

New York State regulations essentially track the language of 7 U.S.C. § 2014(e)(5)(A). Specifically, 18 N.Y.C.R.R. § 387.12(c) provides for "excess medical deductions" from household income "consisting of that portion of medical expenses, excluding special diets, which are in excess of $35 per month and incurred by a household member who meets the definition of elderly (age 60 and older) or disabled ...." While that section does not delineate a method of claiming a deduction for recurring medical expenses, OTDA's SNAP Source Book acknowledges that "Households eligible for the excess medical deduction must be allowed at certification to give a reasonable estimate of the medical expenses they expect to incur during the course of the certification period," and appears to provide a method for presenting those estimates. OTDA SNAP Source Book § 12(E)(7) (available at https://otda.ny.gov/legal).

The Instant Action

According to McCluskey's amended complaint (Doc. No. 27), the allegations of which are assumed to be true for purposes of this Memorandum and Order, McCluskey has been a SNAP recipient since 2005. (Am. Compl. at ¶ 20.) In May 2017, McCluskey was informed by a Dr. Berger that he needed "dental procedures" for a "gum infection," and that failure to undergo such procedures might exacerbate his heart condition. (*Id.* at ¶ 21.) McCluskey obtained a "verification of anticipated dental expenses" from Dr. Berger and a "certification of his heart condition from his cardiologist," and submitted these documents to DSS along with a form requesting an increase in his SNAP benefits. (*Id.* at ¶¶ 22–23.)

Defendant Ryan, the SNAP Director at DSS, subsequently sent McCluskey a "Document Request Form," which "demanded incurred medical bills." (*Id.* at ¶ 25.) Since he had yet to incur any dental expenses, he responded by sending Ryan bills from his cardiologist. (*Id.*) Based on these bills, DSS increased his SNAP benefits by $8.00 per month. (*Id.* at ¶ 26.) DSS declined to make an adjustment based on the anticipated dental expenses. (*Id.*)

McCluskey appealed, quoting language from the OTDA Source Book § 12(E)(7). (*See* Am. Compl. at ¶ 26.) Nonetheless, OTDA affirmed DSS's decision, quoting the provisions of 18 N.Y.C.R.R. § 387.12(c) and holding: "[T]he undisputed record demonstrates that the appellant has not yet incurred the anticipated dental expenses." (Am. Compl. at ¶ 31.) Defendant Oto, the OTDA's Principal Hearing Officer, affirmed that decision. (*Id.* at ¶ 36.) According to McCluskey, Oto relied in part on her own "irrelevant conclusion" that Dr. Berger's submission contained "only estimates, and it was not reasonabl[y] certain that plaintiff would actually incur these costs in the certification period." (*Id.* at ¶ 37.) McCluskey claims this finding was contradicted in a sworn statement from Dr. Berger, who stated that he expected McCluskey would incur the dental expenses during the certification period. (*Id.* at ¶ 39.)

After receiving Oto's decision, McCluskey wrote two letters to the OTDA Commissioner, each of which stated in part:

> Please be on notice that … 18 NYCRR 387.12, as it is being administered by [DSS] and being affirmed by the OTDA, is in violation of 7 USC 2014(5)(B) [*sic*]. This illegal practice … has been the custom of the agency since 2012, and has been ignored by the OTDA.

(Am. Compl. at ¶ 42.) The allegation regarding 2012 was based on the DSS's denial of his January 2012 request for "a revised computation of his SNAP benefits based on an increase in his anticipated medical costs at that time." (*Id.* at ¶ 43.)

4

Less than a month after writing the second these two letters, McCluskey commenced this action. In a nutshell, McCluskey alleges that the "DSS and OTDA practice of adhering literally to State law 18 N.Y.C.R.R. 387.12(c) in its method of allowing only incurred expenses for the medical deduction violates the federal statute 7 USC 2014(5)(B) [*sic*] and its implementing regulation" because "the federal law allows, as a deduction against countable income, a method which includes anticipated expenses which are not yet incurred at certification." (*Id.* at ¶ 15.) McCluskey's amended complaint does not expressly allege a violation of the Supremacy Clause. Rather, its causes of action allege that defendants, through their "customs, policies, and practices," violated McCluskey's "rights under 7 USC 2014" and "constitutional right to due process." (*Id.* at ¶ 60.)

McCluskey's amended complaint makes clear that he is suing Roberts and Oto in their official capacities. (*Id.* at ¶ 43.) The pleading expressly alleges that that Roberts "had connections to the illegal acts" because he "had knowledge of federal law violations and was responsible for the enforcement of the acts but took no action to address the wrongdoing against Plaintiff." (*Id.* at ¶ 8.) Recognizing that "the Eleventh Amendment does not bar a suit for violation of federal rights seeking declaratory or injunctive relief against state officials in their official capacity because such action is not considered an action of the State," McCluskey seeks only injunctive and declaratory relief with respect to these defendants.

The Motions to Dismiss

In two separate motions filed by New York State Department of Law and the Nassau County Attorney, all of the defendants moved to dismiss the amended complaint. (Docs. No. 31, 34.) Those motions – along with two motions for sanctions filed by McCluskey, (Docs. No. 22, 40) – were referred to Magistrate Judge Lindsay for a Report and Recommendation. (Doc. No.

5

45.) On August 27, 2018, Judge Lindsay issued her R&R, recommending that defendants' motions be granted and that McCluskey's motions be denied. With respect to the motions to dismiss, Judge Lindsay concluded: 1) the Eleventh Amendment barred the claims against Roberts, since there were "no allegations that connect Roberts to any of the alleged wrongdoing," (R&R (Doc. No. 49) at 13); 2) "Imhof's lack of personal involvement foreclose[d]" his liability under 42 U.S.C. § 1983, (R&R at 18); 3) McCluskey failed to adequately allege a violation of his procedural due process rights, (R&R at 18–21); and 4) McCluskey did not establish a basis for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), (*id.* at 21–23).

McCluskey did not object to that portion of the R&R which denied his motions, but objected to all of Judge Lindsay's findings and recommendations relating to the motions to dismiss. First, he argued that Roberts was on notice of the wrongdoing in his case because McCluskey had raised similar issues in a 2012 case against the OTDA and its Commissioner. Second, he argued that Imhof had constructive knowledge that DSS was violating federal law because McCluskey copied him on correspondence he sent to Ryan. Third, he argued that he had not only adequately alleged a procedural due process violation, but had also alleged a violation of 7 U.S.C. § 2014(e)(5)(B) and the Supremacy Clause as well. Fourth, McCluskey argued that he had adequately established a *Monell* claim by alleging two instances in which DSS disregarded 7 U.S.C. § 2014(e)(5)(B) and relied on an allegedly unconstitutional state law – 18 N.Y.C.R.R. §387.12 – in ruling against him.

Judge Bianco addressed these objections in an order dated September 21, 2018, which adopted the R&R in its entirety. First, he held that Judge Lindsay properly recommended dismissing the claims against Roberts. Noting that McCluskey would have to establish that

6

Roberts had "a direct connection to, or responsibility for, the alleged illegal action," (9/21/18 Order (Doc. No. 54) at 4) (quoting *Zappulla v. Fischer*, No. 11-CV-6733 (JMF), 2013 WL 1387033, at *10 (S.D.N.Y. Apr. 5, 2013)), Judge Bianco held that McCluskey's amended complaint failed to "allege that Roberts was directly connected to or responsible for the allegedly illegal determinations." (*Id.*). Second, he held that Judge Lindsay properly recommended dismissing the claims against Imhof. Judge Bianco noted that supervisory liability under § 1983 attaches only when "an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or 'deliberate indifference' by failing to act," (*id.* at 5 (quoting *McLennon v. City of New York*, 171 F. Supp. 3d 69, 101-02 (E.D.N.Y. 2016)). Judge Bianco then held that, even assuming that Imhof knew of the alleged constitutional violations, McCluskey's amended complaint was "devoid of any non-conclusory allegation that Imhof acted with gross negligence or deliberate indifference" in failing to act to prevent the violation. (*Id.*)

Third, with respect to the procedural due process claim, Judge Bianco opined that McCloskey misunderstood Judge Lindsay's basis for denying the procedural due process claim. Judge Bianco pointed out that Judge Lindsay did not conclude that McCluskey "failed to state a procedural due process claim because post-deprivation procedures were available to him," but recommended denying the due process claim because she "determined that those procedures were adequate." (*Id.* at 5.) Judge Bianco upheld that determination and, in a footnote, held that it was unnecessary to "decide whether plaintiff's claims are based on established state procedures rather than random acts." (*Id.* at 5, n.5.) Finally, Judge Bianco held that Judge Lindsay was correct in dismissing the *Monell* claim because 1) McCluskey had not alleged a constitutional violation, 2) the two instances in which McCluskey was allegedly unlawfully denied benefits were insufficient to establish a municipal custom or policy, and 3) McCluskey

7

had not alleged that DSS "made any meaningful or conscious choice to carry out the state law governing benefits determinations (and it is highly unlikely that plaintiff could plausibly assert that it did)." (*Id.* at 7).

The Instant Motions

After Judge Bianco entered judgment against him, McCluskey filed the instant motions to alter and amend the judgment pursuant to Rule 59(e) and to file a supplementary complaint pursuant to Rule 15(d). McCluskey's Rule 59(e) motion addresses each of Judge Bianco's findings, largely repeating the arguments from his objections to the R&R or introducing new authorities in support of those arguments, but also advancing altogether new arguments.[3] First, McCluskey argues that Judge Bianco was "utterly incorrect" in holding that there was no evidence to connect Roberts to the alleged wrongdoing. (Mot. to Amend Judgment (Doc. No. 59) at 3.) Citing to New York Social Services Law § 22, which authorizes OTDA's commissioner to "designate and authorize one or more appropriate members of his staff" to decide appeals from the denial of benefits, McCluskey argues that Roberts was connected to the alleged wrongdoing since it was his designee who upheld Ryan's decision to deny him benefits. (*Id.*) Second, citing to *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001), for the proposition that personal involvement of a supervisory official may be established

---

[3] The motion also raises a procedural argument, asserting that Judge Bianco adopted the R&R without awaiting his reply papers. (Mot. to Amend Judgment at 1.) In support of this argument, McCluskey cites to "FRCP 27(a)(2)," alleging that this section provides that "any party may respond to a motion within 10 days after service." (*Id.*) However, the briefing of objections to the R&R is governed by Fed. R. Civ. P. 72(b)(2), which provides, in pertinent part:

> Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy.

Rule 72(b)(2) does not authorize a reply. Even if it did, McCluskey has not explained what, if anything, in the reply papers would have altered Judge Bianco's decision.

by evidence that "the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong,'" McCluskey argues that Judge Bianco's "contention that plaintiff's allegations do not support deliberate indifference is irrelevant." (Mot. to Amend Judgment at 9.)

Third, with respect to the due process claim, McCluskey argues that Judge Bianco himself misconstrued the law when he ruled that he did not need to "decide whether plaintiff's claims are based on established state procedures rather than random acts." (*Id.* at 6.) McCluskey contends that "the actual procedures utilized in the denial of plaintiff's request for benefits were all post-deprivation remedies." (*Id.*) McCluskey also points out that his procedural due process claim was not the only violation of federal law alleged in his pleading, claiming that his amended complaint also alleged violations of the Supremacy Clause and 7 U.S.C. § 2014(e)(5)(B).

Finally, McCluskey advances several arguments relating to the *Monell* issue. First, he invokes the doctrine of collateral estoppel, alleging that the "identical issue" was litigated in his 2012 action and that it was "determined that there was a municipal policy underlying the action which deprived plaintiff of SNAP benefits." (*Id.* at 2, 8.) Second, he argues that Judge Bianco "misconstrued the law in stating that an unconstitutional law" was a prerequisite to his *Monell* claim, (*id.*), and that he had in fact alleged a violation of the Supremacy clause, (*id.* at 7). Third, relying on *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 411 (E.D.N.Y. 2013), McCluskey argues that Judge Bianco was mistaken in ruling that there were "no allegations that DSS made any meaningful or conscious choice to carry out the state law governing benefits determinations" and that it was "highly unlikely that plaintiff could plausibly assert that it did." (Mot. to Amend Judgment at 3–4.)

**STANDARD OF REVIEW**

"Under Rule 59(e), 'district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice.'" *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.")

Because McCluskey is proceeding *pro se*, the Court "must interpret his papers liberally 'to raise the strongest arguments that they suggest.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a court may grant a Rule 59(e) motion "only if the movant satisfies the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Hollander v. Members of Bd. of Regents*, 524 F. App'x 727, 729 (2d Cir. 2013) (summary order) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

**DISCUSSION**

With one exception, noted below, McCluskey's arguments are not cognizable under Rule 59(e). Some of the arguments raised in McCluskey's Rule 59(e) motion attempt to raise new arguments that were never raised before Judge Bianco. McCluskey's first argument, for example, asserts that Roberts was connected to the alleged wrongdoing because the Hearing

Officer who upheld Ryan's determination was a "Commissioner's Designee." That argument – which would have the absurd effect of essentially eliminating the OTDA Commissioner's Eleventh Amendment immunity in every case – was not made in the objections to the R&R. Similarly, the collateral estoppel argument which McCluskey advances in connection with his *Monell* claim was never raised in the objections to the R&R.

Other arguments attempt to relitigate the objections to the R&R. For example, McCluskey's argument that Judge Bianco misconstrued the law in denying the procedural due process claim is simply an attempt to secure a rehearing on the merits or "a second bite at the apple." See *Sequa Corp.*, 156 F.3d at 144. The same is true of two of McCluskey's other arguments: that Judge Bianco 1) misconstrued the law in dismissing his *Monell* claim and 2) was mistaken in ruling that there were "no allegations that DSS made any meaningful or conscious choice to carry out the state law governing benefits determinations," (*id.* at 3–4).

To be sure, some of McCluskey's arguments cite to cases and authorities that were not mentioned in his objection to the R&R. However, these cases are either not controlling or do not establish "an intervening change of controlling law." For example, in arguing that Imhof has supervisory liability under § 1983, McCluskey relies on a 2001 case – *Johnson v. Newburgh Enlarged Sch. Dist.* – for the proposition that personal involvement of a supervisory official may be established by evidence that "the [official], after being informed of the violation through a report or appeal, failed to remedy the wrong." That proposition was well-settled even in 2001; *Johnson* does not reflect a change in the law, much less an "intervening change." Similarly, *Dudek v. Nassau County Sheriff's Dep't*, which McCluskey discusses extensively in arguing that DSS made a "meaningful and conscious choice" to carry out state law is not controlling, since *Dudek* was authored by a court of co-ordinate jurisdiction. *See Nat'l Elec. Signaling Co. v.*

*Telefunken Wireless Tel. Co.*, 221 F. 629, 632 (2d Cir. 1915) (decision of a court of co-ordinate jurisdiction not controlling).

Only one of McCluskey's arguments presents an arguable ground for Rule 59(e) relief – his suggestion that Judge Bianco did not address objections to alleged violations of the Supremacy Clause and 7 U.S.C. § 2014(e)(5)(B). Even if Judge Bianco's 9/21/18 Order did not expressly address these claims, they are without merit for the reasons that follow.

"In order to seek redress through § 1983, … a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law.*" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). The Supremacy Clause, which is contained in Article VI, clause 2, of the United States Constitution, provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

"It is apparent that this Clause creates a rule of decision"; it is "equally apparent that the Supremacy Clause is not the source of any federal rights." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015) (internal quotation marks and citation omitted). Accordingly, the Supremacy Clause "certainly does not create a cause of action," *id.*, and does not provide an implied right of action. *Id.* at 1385. Accordingly, the Supremacy Clause itself may not serve as the basis for McCluskey's § 1983 claim.[4]

---

[4] While the Supreme Court has "long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law," *Armstrong*, 135 S. Ct. at 1384 (citing *Ex parte Young*, 209 U.S. 123, 150–51 (1908)), the Supreme Court has made it clear that this is a "judge-made remedy" which does not "rest[] on an implied right of action contained in the Supremacy Clause." *Id.*

Not all federal statutory violations can serve as the basis for a § 1983 claim, either. "In order to seek redress through § 1983, … a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). "The determination of whether a particular federal statute creates a federal right of the kind enforceable by an action for damages under § 1983 requires inquiry into 'whether or not Congress intended to confer individual rights upon a class of beneficiaries.'" *NextG Networks of NY, Inc. v. City of New York*, 513 F.3d 49, 52 (2d Cir. 2008) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002)). The Supreme Court looks at three factors when making this determination:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing*, 520 U.S. at 340 (internal citations omitted).

The Second Circuit has held that the time limits for determining and providing SNAP benefits, set forth in 7 U.S.C. § 2020(e)(3) and (9), are privately enforceable through lawsuits pursuant to § 1983. *See Briggs v. Bremby*, 792 F.3d 239, 241–46 (2d Cir. 2015). However, neither the Second Circuit nor any court in this Circuit has yet held that 7 U.S.C. § 2014(e)(5)(B) is. Accordingly, it is unclear whether McCluskey can use this statute as a basis for his § 1983 claims.

Even assuming that 7 U.S.C. § 2014(e)(5)(B) can be privately enforced through a civil rights action, McCluskey has not established a violation of this subsection or that state law is inconsistent with this subsection. Section 2014(e)(5)(B) requires state agencies to offer eligible

13

households "a method of claiming a deduction for *recurring medical expenses* that are *initially verified* under the excess medical expense deduction in lieu of submitting information on, or verification of, actual expenses on a monthly basis." 7 U.S.C. § 2014(e)(5)(B) (emphasis added). The only state law which McCluskey cites – 18 N.Y.C.R.R. § 387.12(c) – is not to the contrary; indeed, this state law largely repeats the provisions of 7 U.S.C. § 2014(e)(5)(A). McCluskey does not allege that state law or the OTDA does not offer a method which complies with the dictates of 7 U.S.C. § 2014(e)(5)(B). To the contrary, McCluskey's own pleading alleges that there is an "OTDA rule which, based on federal law, provides three ways a member may establish expected medical expenses." (Am. Compl. at ¶ 48.)

Moreover, McCluskey has not alleged facts to suggest that he is eligible to use such a method. As Judge Lindsay noted in her Report and Recommendation, there is nothing "to suggest that McCluskey's anticipated dental expense would have fallen under the definition of 'recurring medical expenses.'" (R&R at 5 n.5.) There is also nothing to suggest that those expenses were "initially verified." Accordingly, even assuming that a violation of 7 U.S.C. § 2014(e)(5)(B) could serve as a basis for a § 1983 action, McCluskey has not alleged a claim under this federal statute.

The Motion to Amend the Complaint

Since McCluskey is not entitled to relief under Rule 59(e), his motion to supplement or amend the complaint is denied. "A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Rules 59(e) or 60(b)." *Hollander v. Members of Bd. of Regents*, 524 F. App'x 727, 729 (2d Cir. 2013) (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011)).

## CONCLUSION

For the reasons set forth above, McCluskey's motions 1) to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) and 2) to file a supplemental pleading pursuant Fed. R. Civ. P. 15(d) are denied. The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the *pro se* plaintiff and to note that mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York

*Roslynn R. Mauskopf*

September 30, 2019

_____
ROSLYNN R. MAUSKOPF
United States District Judge